IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| ROCKSTAR CONSORTIUM US LP and NETSTAR TECHNOLOGIES LLC, | ) ) ) | |
| | ) | Misc. Civil Action No. [          ] |
| Plaintiffs, | ) | (District of Massachusetts) |
| | ) | |
| v. | ) | |
| | ) | |
| GOOGLE INC. | ) ) | Civil Action No. 13-cv-00893-JRG-RSP |
| Defendant. | ) ) | **Pending in the United States District Court for the Eastern District of Texas** |
| | ) | |

| | | |
|---|---|---|
| GOOGLE INC., | ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 13-5933-CW |
| ROCKSTAR CONSORTIUM US LP and MOBILESTAR TECHNOLOGIES LLC | ) ) ) | **Pending in the United Stated District Court for the Northern District of California** |
| Defendants. | ) ) ) | |

GOOGLE INC.'S MEMORANDUM IN SUPPORT OF ITS MOTION TO COMPEL
DISCOVERY FROM EMC CORPORATION

## TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................1

FACTUAL BACKGROUND ..............................................................................................2

I.     THE UNDERLYING LITIGATIONS ...........................................................2

        A.     Nortel's Bankruptcy and Patent Sale ......................................................2

        B.     The Rockstar-Google Patent Litigations.................................................3

II.     GOOGLE'S SUBPOENAS ARE DIRECTED TO EMC'S ROLE IN THE SUBJECT MATTER OF THE UNDERLYING LITIGATIONS .......................................4

III.     EMC ADMITS IT HAS RESPONSIVE DOCUMENTS AND EMPLOYEES WITH KNOWLEDGE, YET REFUSES TO COMPLY WITH GOOGLE'S SUBPOENAS ................................................................................................7

LEGAL STANDARD.......................................................................................................11

ARGUMENT ....................................................................................................................12

I.     GOOGLE SEEKS DISCOVERY FROM EMC RELEVANT TO ITS DEFENSES TO PLAINTIFFS' PATENT INFRINGEMENT ALLEGATIONS.................................12

II.     EMC HAS NOT MET ITS BURDEN TO DEMONSTRATE THAT THE DISCOVERY IS OVERBROAD OR UNDULY BURDENSOME ...............................13

III.     EMC HAS UNIQUE DOCUMENTS THAT GOOGLE CANNOT OBTAIN FROM OTHER SOURCES, INCLUDING ROCKSTAR .................................16

IV.     EMC IS NOT ENTITLED TO REIMBURSEMENT FOR ITS COMPLIANCE WITH THE SUBPOENAS ....................................................................................18

V.     FURTHER DELAY IN OBTAINING THE REQUESTED DISCOVERY WILL BE EXTREMELY PREJUDICIAL TO GOOGLE. ........................................................20

CONCLUSION.................................................................................................................20

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

### <u>Cases</u>

*Accusoft Corp. v. Quest Diagnostics, Inc.*,
  No. 12-40007-FDS, 2012 WL 1358662 (D. Mass. Apr. 18, 2012) ................................16, 17

*Callwave Commc'ns, LLC v. Wavemarket, Inc.*,
  C 14-80112 JSW (LB)*, 2014 WL 2918218 (N.D. Cal. June 26, 2014)................................19

*Cory v. Aztec Steel Bldg., Inc.*,
  225 F.R.D. 667 (D. Kan. 2005)............................................................................................12

*Dibel v. Jenny Craig, Inc.*,
  No. 06-CV-2533 GEN AJB, 2007 WL 2220987 (S.D. Cal. Aug. 1, 2007)............................17

*Edward D. Ioli Trust v. Avigilon Corp.*,
  No. 2:10-CV-605-JRG, 2012 WL 5830711 (E.D. Tex. Nov. 16, 2012)................................11

*Forth Worth Emp. Ret. Fund v. J.P. Morgan Chase & Co.*,
  297 F.R.D. 99 (S.D.N.Y. 2013) ............................................................................................11

*Haworth, Inc. v. Herman Miller, Inc.*,
  998 F.2d 975 (Fed. Cir. 1993)..............................................................................................17

*Hay & Forage Industries v. Ford New Holland, Inc.*,
  132 F.R.D. 687 (D. Kan. 1990) ............................................................................................18

*In re CareSource Mgmt. Grp. Co.*,
  289 F.R.D. 251 (S.D. Ohio 2013) ...................................................................................16, 17

*In re Exxon Valdez*,
  142 F.R.D. 380 (D.D.C. 1992)..............................................................................................19

*In re Honeywell Int'l, Inc. Sec. Litig.*,
  230 F.R.D. 293 (S.D.N.Y. 2003) ..........................................................................................19

*In re New Eng. Compounding Pharm., Inc.*,
  No. 13-2419-FDS, 2013 U.S. Dist. LEXIS 161652 (D. Mass. Nov. 13, 2013).....................18

*In re Subpoena of Am. Nurses Ass'n*,
  290 F.R.D. 60 (D. Md. 2013)................................................................................................18

*Legal Voice v. Stormans Inc.*,
  738 F.3d 1178 (9th Cir. 2013) ..............................................................................................19

*Linder v. Calero-Portocarrero*,
  251 F.3d 178 (D.C. Cir. 2001)..............................................................................................19

*Mitchell v. Fishbein*,
  227 F.R.D. 239 (S.D.N.Y. 2005) ..........................................................................................11

*Moon v. SCP Pool Corp.*,
  232 F.R.D. 633 (C.D. Cal. 2005) ........................................................................ 17

*Pers. Audio LLC v. Togi Entm't, Inc.*,
  No. 14-MC-80025 RS (NC), 2014 WL 1318921 (N.D. Cal. Mar. 31, 2014) ............ 17

*Playboy Enter., Inc. v. Welles*,
  60 F. Supp. 2d 1050 (S.D. Cal. 1999) .................................................................. 12

*Rendon Group, Inc. v. Rigsby*,
  268 F.R.D. 124 (D.D.C. 2010) ............................................................................. 12

*SEC v. Credit Bancorp*,
  194 F.R.D. 469 (S.D.N.Y. 2000) .......................................................................... 12

*Siltronic Corp. v. Employers Ins. Co. of Wausau*,
  3:11-CV-1493-ST, 2014 WL 991822 (D. Or. Mar. 13, 2014) ............................... 19

*Spiegelberg Mfg., Inc. v. Hancock*,
  No. 07-cv-1314-G, 2007 WL 4258246 (N.D. Tex. Dec. 3, 2007) ......................... 13

*Topolewski v. Quorum Health Res., LLC*,
  No. 3:10-1220, 2013 WL 99843 (M.D. Tenn. Jan. 8, 2013) ................................. 17

*United States v. Blue Cross Blue Shield of Michigan*,
  10-C 2012 WL 4838987 (E.D. Mich. Oct. 11, 2012) ........................................... 19

*United States v. McGraw-Hill Cos., Inc.*,
  No. CV-13-0779, 2014 WL 3810328 (C.D. Cal. Aug. 1, 2014) ....................... 19, 20

## Rules

Fed. R. Civ. P. 26 ......................................................................................... passim

Fed. R. Civ. P. 34 .............................................................................................. 12

Fed. R. Civ. P. 45 ......................................................................................... passim

## INTRODUCTION

This motion relates to two Rule 45 subpoenas that Google Inc. ("Google") served on EMC Corporation ("EMC") on July 22, 2014 and July 31, 2014 in connection with two underlying cases that are currently pending in the United States District Court for the Eastern District of Texas, *Rockstar Consortium US LP and Netstar Technologies LLC v. Google Inc.*, Civil Action No. 13-cv-00893-JRG-RSP, and the United States District Court for the Northern District of California, *Google Inc. v. Rockstar Consortium US LP and Mobilestar Technologies LLC*, Case No. 13-5933-CW.  Pursuant to Rule 37(a) and Rule 45(d)(2)(B)(i), Google respectfully moves this Court for an order compelling EMC to produce all responsive documents requested in Google's subpoenas.  For months, Google has been seeking information uniquely within EMC's possession, custody, and control that is highly relevant to Google's defenses to the patent infringement allegations brought by Rockstar Consortium US LP and its affiliates (collectively, "Rockstar") in the underlying litigations.  EMC admits it has responsive documents and knowledgeable employees, but refuses to produce a single document or to conduct a comprehensive search of its custodial files, e-mail, or other electronically stored information.  Rather, EMC raises a variety of meritless objections in response to Google's subpoenas and places unacceptable conditions on even the most minimal compliance.  Google has worked diligently (through four meet and confers and a three-month exchange of correspondence) to minimize any burden to EMC – all to no avail.  The close of fact discovery is fast approaching in these cases.  To avoid any further prejudice to Google from EMC's failure to respond, Google respectfully requests that the Court order EMC to fully comply with Google's subpoenas.[1]

_____

[1]   For efficiency, and to avoid burdening the Court with multiple motions on its pending subpoenas, Google has briefed the common issues arising from these two cases in this single motion.

## FACTUAL BACKGROUND

**I.** **THE UNDERLYING LITIGATIONS**

    **A.** **Nortel's Bankruptcy and Patent Sale**

Nortel Networks, Inc., along with many of its corporate affiliates (collectively, "Nortel"), filed for bankruptcy relief in 2009.  (Ex 1 at 50.)  To liquidate and satisfy creditors, Nortel sold off its various assets in a series of nine major transactions from 2009 through 2011.  (*Id.* at 1, 55-56.)  The divested assets included a portfolio of more than 6,000 patents and applications that was sold at an auction in June 2011.  Several technology companies participated in the auction, including Rockstar's predecessor company, Rockstar Bidco LP ("Rockstar Bidco") – a consortium of technology companies including Apple, Microsoft, Sony, Ericsson, Blackberry, and ***EMC***.  (*Id.* at 67.)

Prior to the auction, Nortel provided interested buyers access to confidential diligence materials via an electronic data room.  These materials allowed the auction bidders to evaluate the validity, enforceability, infringement, and value of the Nortel patents.  The auction lasted four days and involved nineteen rounds of bidding, with Rockstar Bidco ultimately placing the winning bid and acquiring Nortel's patent portfolio.  After the auction, Rockstar Bidco transferred or licensed the Nortel patents to a dizzying array of other entities, including Rockstar Bidco shareholders such as Apple, Microsoft, Ericsson, Sony, Blackberry, and EMC (*see, e.g.*, Ex. 2 at ¶ 14), and a variety of newly-formed Rockstar affiliates, including Rockstar Consortium US LP (*see, e.g.*, Ex. 2 at Counterclaim ¶¶ 15-21; Ex. 3 at ¶¶ 3, 11).  Since then, Rockstar has pursued a self-described licensing and patent enforcement business, asserting subsets of patents from the Nortel portfolio against various companies, including Google and its customers.

**B.** **The Rockstar-Google Patent Litigations**

Rockstar filed its first case against Google on October 31, 2013 in the United States District Court for the Eastern District of Texas.  (*See* Ex. 3.)  In that case, Rockstar and its affiliate NetStar Technologies LLC allege that Google's online search and advertising technology infringes seven patents that Rockstar Bidco acquired from Nortel.   (*See id.*)

On the same day and in the same Texas court, Rockstar and its affiliate MobileStar Technologies LLC filed a series of suits against Google customers – companies that utilize Google's Android platform in mobile devices they manufacture and sell – including Samsung, HTC, ASUS, LG, ZTE, Pantech, and Huawei.  (*See* Ex. 4.)  Rockstar asserted a different set of seven Nortel patents against Google's customers.  (*See id.*)

To protect itself and its customers against Rockstar's litigation campaign, Google filed a declaratory judgment action on December 23, 2013 in the Northern District of California seeking a declaration of non-infringement of Rockstar's seven mobile device patents.  (*See* Ex. 5.) Rockstar counterclaimed, asserting that certain Google-branded Android devices infringe.  (*See* Ex. 2.)

On December 31, 2013, Rockstar added Google as a defendant in Rockstar's Texas case against Samsung.  (*See* Ex. 6.)  Rockstar eventually accused certain Google-branded mobile devices of infringing the same seven Nortel patents it had asserted against Samsung and the other Android device makers.  (*See* Ex. 7.)

On October 9, 2014, the United States Court of Appeals for the Federal Circuit ordered the Texas cases against the Android device makers stayed pending the outcome of Google's declaratory judgment action.  (*See* Ex. 8.)  The Federal Circuit based its ruling on the "significant overlap" between Google's declaratory judgment action and Rockstar's cases against the device makers.  (*Id.* at 6.)  At present, the Texas case involving Google's search and advertising

technologies ("the Texas Case") and Google's Northern District of California declaratory

judgment action regarding the Android platform ("the California Case") remain active.

## II.     GOOGLE'S SUBPOENAS ARE DIRECTED TO EMC'S ROLE IN THE SUBJECT MATTER OF THE UNDERLYING LITIGATIONS

Rather than limiting its allegations to the asserted patents in each case, Rockstar has

made the auction and Nortel's entire patent portfolio a centerpiece of these litigations.  For

example, in the Texas Case, Rockstar put the value of Nortel's entire portfolio at issue when it

alleged "Google placed an initial bid of $900,000,000 for the patents-in-suit and the rest of the

Nortel portfolio," and "subsequently increased its bid multiple times, ultimately bidding as high

as $4.4 billion."  (Ex. 3 at ¶ 8; *see also id.* at ¶ 5-7, 9.)  Rockstar has also relied on Google's

participation in the auction to support its willful infringement allegations.  (*Id.* at ¶ 33.)

Rockstar also relied on the Nortel auction to support its counterclaims in the California

Case.  Again, Rockstar repeatedly relied on Google's participation in the Nortel patent auction.

(*See* Ex. 2 at Counterclaims ¶¶ 4-10, 28, 31, 38, 43, 47, 54, 59, 62, 69, 73, 77, 84, 89, 92, 100,

104, 107, 115, 118, 126.)  Rockstar identified both Google and Rockstar's bids at the Nortel

auction as alleged "Background Facts" for its counterclaims, in an obvious foreshadowing of

Rockstar's likely damages contentions.  (*Id.* at ¶ 8.)  Rockstar also relied on Google's

participation in the Nortel auction to support its indirect infringement allegations.  (*Id.* at ¶ 31.)[2]

Additionally, Rockstar has propounded discovery requests to Google regarding the

auction and identified at least 23 individuals and entities as knowledgeable regarding the auction

---

[2]   Similarly, Rockstar relied on the Nortel auction in its amended complaints against Google and Samsung in the now-stayed cases involving Google's customers.  In Rockstar's Amended Complaints, Rockstar repeatedly mentioned Google's participation in the Nortel auction.  The Amended Complaints emphasized the amount of Google's bids in the Nortel patent auction, as well as the amount of Rockstar Bidco's winning bid.  (*See* Ex. 6 at ¶¶ 7-12, 137, 142, 146, 153, 158, 161, 169, 173, 176, 182; Ex. 7 at ¶¶ 7-13, 137, 140, 147, 152, 156, 163, 168, 171, 178, 182, 186, 193, 198, 201, 209, 213, 216, 223, 226, 233.)

in its Initial Disclosures, including the companies that backed Rockstar.  (Ex. 9.)  Rockstar continues to highlight the relevance of the auction as the case progresses, most recently putting it front and center in its technology tutorial submitted to the Texas District Court in connection with claim construction.  As part of a tutorial in the Texas Case, one of the opening slides in Rockstar's presentation featured no technical issues, but instead, emphasized the amount of the winning bid for the Nortel patent portfolio at auction.  (Ex. 10 at 2.)  Rockstar's decision to feature the Nortel auction at a proceeding to which it could have no substantive relevance demonstrates Rockstar's intent to refer to the Nortel auction at every possible opportunity.  Thus, it is Rockstar, not Google, that has put the auction at issue.  Google seeks auction-related discovery to defend itself against Rockstar's allegations.  In addition to propounding discovery requests to the Rockstar Plaintiffs in the underlying actions, Google has had to seek much of the auction-related discovery from third-party individuals and entities pursuant to Fed. R. Civ. P. 45.

Publicly available information, fact discovery to date, and EMC's own admissions confirm that EMC was involved with the Nortel auction and Rockstar.  For example, the prior assignee and auction host, Nortel, has detailed EMC's involvement with the patent auction, stating that "[f]ollowing approval of the stalking horse agreement, it became clear that there was substantial interest from a large number of leading tech companies in competing in the auction. These included Apple, Microsoft, Intel, Sony, Ericsson, RIM (now Blackberry) and EMC, among others."  (Ex. 1 at 67.)  Nortel also defines "Rockstar" as "the consortium of bidders consisting [of] Apple, EMC, Ericsson, Microsoft, Research in Motion, and Sony known as Rockstar Bidco who purchased the Patent Portfolio."  (*Id.* at A-4; *see also* Ex. 11 at 29 (stating that the auction resulted in "the residual patents ultimately being sold to Rockstar, a single

5

purpose entity backed by a consortium of major technology companies (namely, Apple, Microsoft, Ericsson, Blackberry, Sony and EMC);" Ex. 12 at 31 (same); Ex. 13 at 37 (same).)

EMC itself has confirmed that it was involved in the Nortel auction and with Rockstar. Indeed, EMC's Senior Director of IP Litigation, Mr. William Clark, and EMC's Assistant General Counsel, Mr. Thomas Brown have both detailed EMC's role. (Ex. 14 at 1.) According to EMC, it was a limited partner of Rockstar Bidco and entered into a commitment letter governing EMC's monetary contribution to Rockstar Bidco's auction efforts. (*Id.*) In the midst of the auction, EMC denied Rockstar's request for an increased contribution and subsequently obtained a license to Nortel's intellectual property assets. (*Id.*) EMC has also stated that EMC attended the Nortel auction and retained outside counsel to represent EMC in connection with negotiating and obtaining a license to the Nortel portfolio. (Ex. 15 at 2.) EMC characterized the circumstances of this license transaction as a "take it or leave it" offer which EMC accepted based on the offered price. (*Id.*)

In light of EMC's role in the Nortel auction and involvement with Rockstar, on July 22, 2014 and July 31, 2014, Google served document subpoenas pursuant to Rule 45 on EMC in connection with each of the underlying Rockstar cases. (Exs. 16-17.)[3] The subpoenas seek information regarding EMC's validity, infringement, and/or valuation analyses of Nortel's patent portfolio, including the patents-in-suit (Ex. 16 at Request Nos. 1-7, 16-17, 46-49, 51-61); EMC's participation in the 2011 auction for Nortel's patent portfolio (*Id.* at Request Nos. 4-14, 50, 62); EMC's role in the formation, governance, and operation of any Rockstar entity, including

---

[3]   EMC served its objections and responses to the subpoena in the Texas Case on August 4, 2014. Among other objections, EMC alleged that the July 22 subpoena was void because it was not signed by an attorney admitted to practice *pro hac vice* before the issuing Texas Court. (*See* Ex. 18.) Out of an abundance of caution, Google reissued the subpoena to obviate that objection, but with no other changes, on August 12, 2014. (Ex. 19.)

Rockstar's patent monetization, licensing, and litigation strategy (*Id.* at Request Nos. 15, 18-44, 62); EMC's document retention policies (*Id.* at Request No. 25); and information EMC has regarding "any government inquiry or investigation regarding any Rockstar entity or the Nortel intellectual property assets auctioned in 2011" (*Id.* at Request No. 55).

## III.    EMC ADMITS IT HAS RESPONSIVE DOCUMENTS AND EMPLOYEES WITH KNOWLEDGE, YET REFUSES TO COMPLY WITH GOOGLE'S SUBPOENAS

Throughout the parties' (four) meet and confers and (at least seven) letters, EMC has repeatedly acknowledged its role in the subject matter of Google's subpoenas and admitted to having relevant documents and knowledgeable employees.  A mere seven days after receiving Google's subpoena in the Texas Case, and before providing its written responses, (on July 29, 2014), in a *first* meet and confer, EMC informed Google that it had already identified at least a "handful" of documents responsive to Google's subpoena.  (Ex. 15 at 1; Ex. 20 at 1.)  Yet, when EMC served its objections and responses on August 4 (and again on August 18), it refused to produce any documents, including the responsive documents it had already identified.  EMC alleged, among other things, that the subpoena is "extraordinarily broad and burdensome" and that "Google . . . must look to Rockstar, not to EMC," for the documents it requests.  (Ex. 18; Ex. 21 at 1.)  EMC also refused to comply with the subpoena "absent an offer from Google to reimburse EMC for its reasonable attorneys' fees and expenses."  (Ex. 18.)

Google explained that its subpoena does not seek "a wide range of subject matter," but rather, addresses three main topics directed to unique EMC information:  (1) EMC's participation in the July 2011 auction for Nortel's intellectual property assets, including EMC's due diligence; (2) EMC's role in the formation and governance of Rockstar, including litigation and licensing strategy; and (3) EMC's role in any monetization of the Nortel patents.  (Ex. 20 at 1-2; Ex. 23 at 2.)  Google also explained that the Subpoena Requests seek information that

cannot be obtained from Rockstar. (*Id.*) For example, information regarding EMC's role and participation in the July 2011 Nortel auction, including EMC's due diligence, is uniquely within the possession of EMC. (*Id.*) Similarly, EMC is the most knowledgeable party regarding its own role in the formation, structure, and governance of Rockstar, and the monetization of the Nortel patents. (*Id.*)

Since its August 4 objections, Google and EMC have met and conferred at least three additional times and have exchanged numerous letters in an attempt to reach an agreement. (Ex. 22 (describing telephonic meet and confers on July 29, August 8, and September 23, and letters sent on August 4, 7, 11, and 18, and on September 2, 26); *see also* Ex. 15 at 1.) Google has attempted to address EMC's objections, but EMC has refused to cooperate at every juncture.

In a ***second*** meet and confer on August 8, EMC reiterated its allegedly limited role in the Nortel auction and specifically identified three responsive documents in its possession: (1) EMC's limited partnership agreement; (2) EMC's commitment letter; and (3) EMC's license agreement. (Ex. 14 at 1; Ex. 23 at 2.) EMC discussed these documents again in a September 23 meet and confer but to date has not produced them. (*Id.*; Ex. 15 at 1-2.) EMC argues that Google can obtain all of EMC's documents from Rockstar, despite Google's explanation that EMC possesses unique information regarding its individual role and participation in the Nortel auction and Rockstar's formation. (Ex. 14 at 1.) At the same time, EMC has represented that it can produce the few documents it has already identified within 48 hours, and <u>will</u> do so <u>only if</u> Google agrees to withdraw the remainder of its subpoenas. (Ex. 15 at 1.) Google has made clear that is not amenable to this proposal, but has attempted to work with EMC to minimize any burden on EMC in searching for and producing responsive documents. (*Id.* at 4.)

During a ***third*** meet and confer on September 23, EMC continued to elaborate on its role relating to the subpoenaed subject matter, informing Google that there are at least five EMC employees knowledgeable regarding the subject matter in the subpoena:  (1) the EMC attorney who attended the Nortel auction on EMC's behalf; (2) the EMC attorney who would have conducted an infringement, validity, or valuation analysis on the Nortel portfolio, if one was performed; (3) EMC's head of Intellectual Property; (4) EMC's head of the Corporate Opportunities business unit; and (5) the EMC employee who negotiated EMC's patent license to the Nortel patent portfolio.  (Ex. 15 at 2.)  EMC represented that it interviewed these employees in connection with the subpoenas and reviewed a "representative sampling" of e-mail communications from the Corporate Opportunities team.  (*Id*.)  However, EMC stated that it is unwilling to conduct any search of these five employees' custodial files, e-mail, or other electronically stored information.  (*Id.*)  EMC has held fast to this position despite Google's proposal of search terms and date limitations, and repeated offers to work further with EMC to design additional search modifications to minimize any alleged burden.  (*Id.* at 4-5; Ex. 24.)

Despite EMC's admissions regarding its role in the subject matter of Google's subpoenas, it has also made sweeping (and questionable) representations regarding the scope of the relevant discovery in its possession.  For example, although EMC has only reviewed a "representative sampling" of e-mail communications from the Corporate Opportunities team, it has stated that it does not have any information responsive to the document requests seeking information regarding analyses of Nortel's patent portfolio (Ex. 16 at Request Nos. 1-7, 16-17, 46-49, 51-61; Ex. 15 at 2.)  Further, without any fulsome investigation, EMC also claims that the only documents in its possession responsive to Request Nos. 4-15, 18-44, 50, and 62 (regarding

the Nortel auction and Rockstar's patent monetization) are the three specific documents discussed above.  (*Id.* at 4.)  (*Id.*)

On September 30, 2014, Google sent EMC a letter identifying a copy of EMC's limited partnership agreement that Google had identified during the collection of documents from its own files.  (Ex. 25.)  The letter gave EMC notice that Google intended to produce this document to Rockstar in connection with the underlying litigation, as Google is required to do under the operative Nondisclosure Agreements with Nortel governing Google's participation in the auction and access to Nortel confidential information.  (*Id.*)  In its most recent correspondence, EMC argues that Google's identification of this ***one*** document related to EMC's role in the Nortel auction allegedly undermines the propriety of all of Google's subpoena requests.  (*See* Ex. 24.) Yet, the fact that Google has identified only ***one*** document related to EMC during fact discovery further supports the need for discovery from EMC seeking its unique documentation (unavailable from other sources) regarding EMC's individual role in the auction and involvement with Rockstar.[4]

In a ***fourth*** meet and confer on October 31, 2014, in-house counsel for Google and EMC discussed EMC's objections to Google's subpoenas.  (Ex. 27.)  Google explained that EMC's refusal to produce the responsive documents EMC has already identified is not reasonable.  (*Id.* at 2.)  Further, EMC's refusal to undertake a reasonable search for responsive documents or to

---

[4]  Google identified the EMC agreement during the collection and review of its own documents in connection with fact discovery in the underlying cases.  This document was identified after Google had served its subpoenas on EMC, and Google promptly provided notice. It is Google's understanding that Nortel provided this document in the electronic data room that was made available to all participants in the 2011 auction.  Thus, despite EMC's inflammatory arguments in its most recent correspondence and its attempts to ascribe bad motives to Google, there was nothing untoward or even unusual in the identification of this document,  And as discussed above, the identification of this single document does nothing to remedy EMC's wholesale refusal to provide complete responses to the subpoena requests.

engage in discussions regarding Google's proposed search terms and date restrictions is also not reasonable.  (*Id.*)  Finally, EMC's demand for reimbursement is not warranted in this case.  In response, EMC reiterated its argument that the discovery can be obtained from Rockstar and agreed that the parties are at an impasse.  (*Id.* at 1.)

In spite of Google's efforts to confer in good faith and minimize the burden of compliance on EMC, the parties are at impasse.  Under the Court's Docket Control Order, the deadline to complete fact discovery is January 7, 2015.  (Ex. 26 at 2.)  EMC has already delayed compliance with Google's subpoenas for more than three months, and Google needs the requested discovery to develop its defenses to Rockstar's patent infringement allegations.

## LEGAL STANDARD

Rule 26(b) allows a party to obtain discovery "regarding any non-privileged matter that is relevant to any party's claim or defense."  Fed. R. Civ. P. 26(b)(1).  "Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."  (*Id.*)  Accordingly, "[t]he rules of discovery are accorded a broad and liberal application."  *Edward D. Ioli Trust v. Avigilon Corp.*, No. 2:10-CV-605-JRG, 2012 WL 5830711, at *1 (E.D. Tex. Nov. 16, 2012); *see also Mitchell v. Fishbein*, 227 F.R.D. 239, 248 (S.D.N.Y. 2005) ("Relevance for discovery purposes is an extremely broad concept which has been construed . . . to encompass any matter that bears on, or reasonably could lead to other matters that could bear on, any issue that is or may be in the case.").

Once relevance has been shown, "it is up to the responding party to justify curtailing discovery."  *Forth Worth Emp. Ret. Fund v. J.P. Morgan Chase & Co.*, 297 F.R.D. 99, 102 (S.D.N.Y. 2013).  "General and conclusory objections as to relevance, overbreadth, or burden are insufficient to exclude discovery of requested information."  *Id*.  Rather, the entity resisting discovery "has the burden of showing specifically how, despite the broad and liberal construction

afforded the federal discovery rules, each [request] is not relevant or how each question is overly broad, burdensome or oppressive, . . . submitting affidavits or offering evidence revealing the nature of the burden." *Id.*; *see also Cory v. Aztec Steel Bldg., Inc.*, 225 F.R.D. 667, 672 (D. Kan. 2005) (discovery "should be allowed unless the hardship is unreasonable in light of the benefits to be secured from the discovery").

It is well-settled that "[t]he non-party witness is subject to the same scope of discovery under [Rule 45] as that person would be as a party to whom a request is addressed pursuant to Rule 34." Fed. R. Civ. P. 45, Advisory Committee's Note (1991 amendment). *See also SEC v. Credit Bancorp*, 194 F.R.D. 469, 471 n.4 (S.D.N.Y. 2000) ("The scope of discovery under the two rules [45 and 34] is coextensive . . . at least with respect to documentary discovery."); *Rendon Group, Inc. v. Rigsby*, 268 F.R.D. 124, 126 (D.D.C. 2010) ("Rule 26 of the Federal Rules of Civil Procedure defines and governs the scope of discovery for all discovery devices, and, therefore, Rule 45 must be read in light of it.").

"For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action." Fed. R. Civ. P. 26(b)(1). Indeed, "[t]he only restriction in this discovery is that the producing party be protected against undue burden and expense and/or invasion of privileged matter." *Playboy Enter., Inc. v. Welles*, 60 F. Supp. 2d 1050, 1053 (S.D. Cal. 1999). Avoidance of such burden and expense is the only explicit consideration in compelling compliance with a subpoena pursuant to Rule 45. Fed R. Civ. P. 45(d).

## ARGUMENT

## I.  GOOGLE SEEKS DISCOVERY FROM EMC RELEVANT TO ITS DEFENSES TO PLAINTIFFS' PATENT INFRINGEMENT ALLEGATIONS

Google's subpoenas to EMC request documents relevant to Google's defenses of invalidity, unenforceability, and non-infringement of the patents-in-suit, and to rebut Rockstar's

contentions on damages.  Rockstar chose to make the Nortel auction relevant to this litigation by relying on it in its pleadings, highlighting it in its Initial Disclosures, and seeking discovery from Google regarding its auction-related activities.  (*See supra* Sections I-II.)  EMC has admitted to participating in the auction, contributing to Rockstar's auction efforts, including an amount paid to Nortel as part of the winning bid, and obtaining a license to Nortel's portfolio.  (*See supra* Section III.)  In connection with this role, EMC had access to Nortel's electronic data room which contained confidential diligence materials enabling EMC to analyze Nortel's portfolio.

Google's subpoena requests are directed to obtaining this information, as EMC's auction participation and Nortel patent analyses are relevant to Google's defenses of invalidity, unenforceability, and the calculation of damages.  (Ex. 20 at 2.)  Additionally, the requests directed to EMC's role in Rockstar's formation and governance, including its litigation and licensing strategy and the monetization of the Nortel patents, are relevant to the calculation of damages, including the *Georgia-Pacific* factors underlying a reasonable royalty analysis.  (*Id.*)  In sum, Google's requests fit squarely with the broad and liberal application of Rule 26(b) which permits a party to obtain discovery "regarding any non-privileged matter that is relevant to any party's claim or defense" or "reasonably calculated to lead to the discovery of admissible evidence."  Fed. R. Civ. P. 26(b)(1).

## II. EMC HAS NOT MET ITS BURDEN TO DEMONSTRATE THAT THE DISCOVERY IS OVERBROAD OR UNDULY BURDENSOME

Because Google has established that the requested materials are within the scope of permissible discovery, the burden is on EMC to demonstrate that the subpoena requests are irrelevant, overbroad, or unduly burdensome.  *See Spiegelberg Mfg., Inc. v. Hancock*, No. 07-cv-1314-G, 2007 WL 4258246, at *1 (N.D. Tex. Dec. 3, 2007).  EMC has not met this burden.

Although EMC has objected to Google's subpoenas on relevance grounds (Ex. 18), it has

not addressed Google's substantive arguments as to why the discovery it seeks is in fact relevant. In response to EMC's objections, as previously discussed, Google explained that: (1) the requests directed to EMC's diligence and participation in the Nortel auction are relevant to Google's invalidity and unenforceability defenses and to rebutting Plaintiffs' damage contentions; and (2) the requests direct to EMC's role in Rockstar's governance and patent monetization strategy are relevant to the calculation of damages.  (Ex. 20 at 2.)  EMC has still failed to rebut the relevance of Google's requests, but instead, continues to reiterate its general and conclusory blanket statements of irrelevance.

EMC's claim that Google's subpoena requests are overbroad also fails.  Besides the fact that the requests are directed to specific categories of documents – EMC's involvement with the Nortel's 2011 auction and with Rockstar – and themselves provide examples of the information Google seeks (Ex. 16), Google has provided EMC with further examples and guidance in several letters and telephonic meet and confers.  (Ex. 15 (providing summary).)  Google has also proposed a list of search terms for EMC to run and date restrictions for its searches in order to address EMC's breadth objections and to minimize any alleged burden EMC may face in conducting its search and review of documents.  (*Id.* at 4-5.)

EMC has also objected that searching for and producing documents would be unduly burdensome.  But EMC's objection is belied by its own representations regarding its "limited role" in the Nortel auction.  (*Id.* at 3.)  For example, EMC has told Google that it was a mere "licensee" as compared to the Rockstar entities and other shareholders.  (*Id.*)  If EMC's role was in fact so limited, it would not be a lengthy or difficult process for EMC to conduct a comprehensive search of its employees' custodial files, e-mail, or other electronically stored information.  Nor would it be particularly expensive for EMC to produce responsive, non-

privileged documents.  This is especially so because EMC has only <u>five</u> employees with knowledge of the subject matter in Google's document requests and because EMC has <u>already</u> identified three responsive documents in its possession.  (*Id.* at 1-2.)

Google has addressed EMC's remaining objections as well.  For example, in response to certain document requests, EMC has stated that it does not possess responsive documents.  (Ex. 15 at 2-4.)  But EMC's representations are suspect based on the fact that EMC has refused to conduct a comprehensive search of its custodial files, e-mail, or other electronically stored information.  (*Id.*)  Google has explained this disconnect to EMC (*id.*), but EMC has made no effort to justify or support its position.  As another example, EMC has expressed concern that the document requests put EMC's confidential information at risk.  (Ex. 18.)  In addition to providing copies of the Protective Orders in each of the underlying cases, Google has explained to EMC that the Protective Orders expressly protect third-party confidential material produced in each of the litigations, specifically referring EMC to the relevant provisions.  (Ex. 14 at 2.)  At EMC's request, Google has also agreed to treat confidential documents as "Outside Counsel Eyes Only."  (Ex. 15 at 1-2.)  Finally, Google has also explained that the subpoena requests do not seek privileged documents, and that EMC can record them in a privilege log rather than produce them – as is done in the normal course.  (Ex. 15 at 1-2.)[5]  In sum, the discovery Google seeks is relevant and permissible, and EMC has not proven otherwise.

---

[5]   Notably, EMC also claims that communications between EMC and other Rockstar shareholders are protected under a common interest privilege.  (Ex. 15 at 3.)  If that is the case, EMC should produce the common interest agreement itself as responsive to Google's subpoena. (*Id.*)  Otherwise, Google has no way to verify the accuracy of EMC's broad-sweeping statements regarding the agreement or its claims of privilege.  Further, EMC's assertion of a common interest privilege is flatly inconsistent with its repeated objection that it is merely an innocent bystander that licensed the Nortel portfolio, without any other involvement with Rockstar since the 2011 auction or the litigation against Google.

## III.   EMC HAS UNIQUE DOCUMENTS THAT GOOGLE CANNOT OBTAIN FROM OTHER SOURCES, INCLUDING ROCKSTAR

Along with the objections discussed above, EMC objects to the subpoenas on the ground that Google can, and should, obtain the requested documents from Rockstar.  (Ex. 21 at 1) (stating that "Google . . . must look to Rockstar, not to EMC," for the documents it requests); Ex. 14 at 1-2; Ex. 15 at 1.)  But EMC is incorrect.  As Google has repeatedly explained, its subpoenas seek documents in EMC's unique possession, custody, and control.  (Ex. 20 at 2.)  For example, information regarding EMC's role and participation in the July 2011 Nortel auction, including EMC's due diligence regarding the Nortel patents, is uniquely within the possession of EMC.  (*Id.*)  Similarly, EMC is the most knowledgeable party regarding its own role in the formation, structure, and governance of Rockstar, and the monetization of the Nortel patents. (*Id.*)  Furthermore, regardless of whether there is some overlap between EMC and Rockstar's responsive documents – which Google does not concede there is – Google cannot wait for Rockstar to complete its document production before seeking compliance with the subpoenas from EMC.  This is particularly so in this instance because the deadline for the completion of all fact discovery in the Texas Case is January 7, 2015 –  a mere two months away – and the deadline for fact discovery in the California Case is January 23, 2015 – only about two weeks later.  (Ex. 26 at 2.)  Under EMC's suggested procedure, Google would not be able to obtain document discovery from EMC and still have time to depose an EMC witness.

In its latest correspondence, EMC cites several cases in support of its argument that Google must completely exhaust all efforts to obtain discovery from Rockstar before seeking documents from EMC.  Those cases are inapposite.  (*See* Ex. 27 at 1.)  In *CareSource* and *Accusoft*, the party-defendant expressly represented that the discovery sought by plaintiff's

subpoena could be obtained from them, rather than the third party.[6]  And in *Haworth*, *Personal*

*Audio*, *Dibel*, and *Moon*, the party seeking discovery did not establish that there were unique

documents within the third party's control.[7]  Neither is the case here.  Rockstar has not, and

cannot, represent that all of the discovery Google seeks from EMC can obtained from them.

Google's subpoena requests seek discovery uniquely in *EMC's* possession, and not obtainable

from Rockstar – for example, information regarding *EMC's* role in the Nortel auction, *EMC's*

evaluation of the Nortel patents, and *EMC's* involvement in the formation and governance of

---

[6]  In *In re CareSource Mgmt. Grp. Co.*, the third party submitted an affidavit that it would require "1,000 hours of employee time" to comply with the plaintiff's subpoena and upon the defendant representations, the Court found that the documents sought "have been, or will be, produced to [the plaintiff] Sagebrush by [the defendant] HMS."  *In re CareSource Mgmt. Grp. Co.*, 289 F.R.D. 251, 252-24 (S.D. Ohio 2013).  Similarly, in *Accusoft Corp. v. Quest Diagnostics, Inc.*, the defendants represented that "much of the information sought through the [plaintiff's] subpoenas could be obtained through discovery requests directed to defendants themselves."  *Accusoft Corp. v. Quest Diagnostics, Inc.*, No. 12-40007-FDS, 2012 WL 1358662, at *10 (D. Mass. Apr. 18, 2012).

[7]  In *Haworth, Inc. v. Herman Miller, Inc.*, the nonparty Allsteel had already "produced several thousand pages of documents in response to [the] subpoena" and the party seeking the discovery (Herman Miller) had no evidence that any further documentation was uniquely within the third party's control.  *Haworth, Inc. v. Herman Miller, Inc.*, 998 F.2d 975, 977-78 (Fed. Cir. 1993).  The majority of the court's holding in *Personal Audio LLC v. Togi Entm't, Inc.* was premised on finding that the party seeking third party discovery did not establish relevance, and to a lesser degree, because it was not established to be in the unique possession of the third party. *Pers. Audio LLC v. Togi Entm't, Inc.*, No. 14-MC-80025 RS (NC), 2014 WL 1318921, at *2-3 (N.D. Cal. Mar. 31, 2014).  In *Dibel v. Jenny Craig, Inc.*, the plaintiff served subpoenas on defendants' counsel and did not propound any other discovery in the case.  *Dibel v. Jenny Craig, Inc.*, No. 06-CV-2533 GEN AJB, 2007 WL 2220987, at *2 (S.D. Cal. Aug. 1, 2007).  The Court found the plaintiffs "failed to demonstrate that no other means exist to obtain the information sought."  *Id.*  In *Moon v. SCP Pool Corp.*, the court granted defendant's motion to quash plaintiff's third party subpoena finding the requests to be "overbroad on their face" and all pertaining to and obtainable from defendant.  *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 637-638 (C.D. Cal. 2005).  Finally, EMC cites *Topolewski v. Quorum Health Res., LLC*, No. 3:10-1220, 2013 WL 99843 (M.D. Tenn. Jan. 8, 2013) for the proposition that "if the information is publicly available, the Court is required to limit its discovery from [third party] Mr. Williams."  But EMC has not identified any information sought by Google's Subpoenas that is available publicly. Instead, in *Topolewski*, plaintiff served a subpoena on defendant's counsel and the court found that, in addition to being overbroad, on its face, "a subpoena directed to opposing counsel in a pending action is improper."  *Id.* at *3-4.

any of the Rockstar entities.  Thus, Google's subpoenas are directed to exactly the type of third

party discovery contemplated under Rule 45.  *See generally* Fed. R. Civ. P. 45; Notes of

Advisory Committee on the 2013 Amendment to Fed. R. Civ. P. 45 (noting that "[s]ubpoenas are

essential to obtain discovery from nonparties"); *see also Hay & Forage Industries v. Ford New

Holland, Inc.*, 132 F.R.D. 687, 690 (D. Kan. 1990) (denying the motion to quash deposition of

attorney who prosecuted the plaintiff's patent application as he was best and perhaps only

available source for first-hand knowledge and information relevant to defense of inequitable

conduct).  Further, even if the documents sought were obtainable from Rockstar (which they are

not), this Court has recognized that "[t]he mere availability of documents from another source,

however, does not preclude a subpoena directed to a nonparty if the party serving the subpoena

can show that it is more expeditious to obtain the documents from a witness." *In re New Eng.

Compounding Pharm., Inc.*, No. 13-2419-FDS, 2013 U.S. Dist. LEXIS 161652, at *35-36 (D.

Mass. Nov. 13, 2013) (citing *Gray v. Town of Easton*, No. 3:12-cv-166 (RNC), 2013 U.S. Dist.

LEXIS 75062 (D. Conn. May 29, 2013)).

## IV.     EMC IS NOT ENTITLED TO REIMBURSEMENT FOR ITS COMPLIANCE WITH THE SUBPOENAS

EMC's position that it will not comply with the subpoenas "absent an offer from Google

to reimburse EMC for its reasonable attorneys' fees and expenses" is obstructionist and has no

merit.  (Ex. 18 at 1.)  First, reimbursement is not appropriate for responding to a subpoena in the

ordinary course of business.  *See, e.g., In re Subpoena of Am. Nurses Ass'n*, 290 F.R.D. 60, 77

(D. Md. 2013) (attorneys' fees would not be shifted completely to requesting party because non-

party "has undoubtedly received third-party subpoenas in the past" and "[s]uch subpoenas are a

cost of doing business in today's society").  Second, discovery to date indicates that EMC is not

an ordinary, disinterested third-party, given that EMC participated in the Nortel auction and is a

limited partner of Rockstar Bidco.  Cost-shifting is inappropriate where the entity objecting to discovery has an interest in the outcome of the litigation.  *See, e.g.*, *United States v. Blue Cross Blue Shield of Michigan*, 10-CV-14155, 2012 WL 4838987, at *2 (E.D. Mich. Oct. 11, 2012) ("To determine how much cost to shift from the nonparty, the court must balance the equities of the particular case, including '(1) whether the putative nonparty actually has an interest in the outcome of the case, (2) whether it can more readily bear its cost than the requesting party; and (3) whether the litigation is of public importance.'") (emphasis added) (quoting *In re Exxon Valdez*, 142 F.R.D. 380, 383 (D.D.C. 1992)); *Callwave Commc'ns, LLC v. Wavemarket, Inc.*, C 14-80112 JSW (LB), 2014 WL 2918218, at *3 (N.D. Cal. June 26, 2014).  Here, as a licensee to the Nortel patent portfolio, EMC has at least an interest in the resolution of Rockstar's infringement claims and Google's defenses in the underlying litigation.

Finally, even if EMC were a disinterested party, courts do not shift costs unless the expenses incurred are "significant."  *Legal Voice v. Stormans Inc.*, 738 F.3d 1178, 1184 (9th Cir. 2013); *Linder v. Calero-Portocarrero*, 251 F.3d 178, 182 (D.C. Cir. 2001).  Courts have also held that the entity seeking costs must prove the "significance" of the expense with an estimation of the cost and supporting evidence.  *Callwave*, 2014 WL 2918218, at *6; *In re Honeywell Int'l, Inc. Sec. Litig.*, 230 F.R.D. 293, 303 (S.D.N.Y. 2003).  Influential to this determination is the financial wherewithal of the subpoena target.  *See, e.g.*, *Siltronic Corp. v. Employers Ins. Co. of Wausau*, 3:11-CV-1493-ST, 2014 WL 991822, at *1 (D. Or. Mar. 13, 2014) ("[w]hether a cost is 'significant' necessarily relates to the nature of the case and the parties' respective financial situations"); *United States v. McGraw-Hill Cos., Inc.*, No. CV-13-0779, 2014 WL 3810328, at *4 (C.D. Cal. Aug. 1, 2014) ("Courts should consider the ability of the producing non-party to bear the costs of production;" "'[A] court might take into account the financial ability of the

non-party to bear some costs,' . . . .[as] <u>an expense might be "significant," for instance, to a small family-run business, while being 'insignificant' to a global financial institution</u>.").

EMC has not even attempted to meet its burden to seek costs.  Accordingly, EMC cannot hide behind its reimbursement request to avoid complying with Google's subpoenas.

## V.      FURTHER DELAY IN OBTAINING THE REQUESTED DISCOVERY WILL BE EXTREMELY PREJUDICIAL TO GOOGLE.

The parties' deadline for completing fact discovery – January 2015 – is fast approaching. Google has repeatedly attempted to address EMC's objections and arguments in order to reach a compromise, but EMC has prevented Google from moving the ball forward.  Months have passed since Google served its subpoenas on EMC, and Google cannot wait any longer for EMC to cooperate, given that EMC has reiterated its intention of standing on its objections.  Indeed, further delay will hamper Google's ability to take depositions and develop additional facts before fact discovery closes.  Absent an order compelling EMC to comply with Google's subpoenas, Google will suffer significant prejudice.

## CONCLUSION

For the foregoing reasons, the Court should compel EMC's full compliance with Google's subpoenas pursuant to Fed. R. Civ. P. Rule 45(d)(2)(B)(i).

DATED: November 4, 2014            QUINN EMANUEL URQUHART & SULLIVAN, LLP

                                   By ___ */s/ Anastasia M. Fernands* _____

       Anastasia M. Fernands
       State Bar No. No. 633131
         anastasiafernands@quinnemanuel.com
       Robert Wilson
         robertwilson@quinnemanuel.com
       QUINN EMANUEL URQUHART &
       SULLIVAN, LLP
       51 Madison Avenue, 22nd Floor
       New York, New York 10010
       Telephone:  (212) 849-7000
       Facsimile:  (212) 849-7100

       QUINN EMANUEL URQUHART &
       SULLIVAN, LLP
       Charles K. Verhoeven
         charlesverhoeven@quinnemanuel.com
       David A. Perlson
         davidperlson@quinnemanuel.com
       50 California Street, 22nd Floor
       San Francisco, California  94111-4788
       Telephone: (415) 875 6600
       Facsimile: (415) 875 6700

       *Attorneys for Google Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I served or caused to be served a copy of this Motion, and all supporting papers, on counsel of record for EMC Corporation, Rockstar Consortium US LP and NetStar Technologies LLC, and Rockstar Consortium US LP and MobileStar Technologies LLC by e-mail and First Class Mail.

    */s/ Anastasia M. Fernands*
Anastasia M. Fernands