UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| ROCKSTAR CONSORTIUM US LP and NETSTAR TECHNOLOGIES LLC, Plaintiffs, v. GOOGLE INC., Defendant, v. EMC CORPORATION, Respondent. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Misc. Civil Action No. 14-91322-FDS |

MEMORANDUM AND ORDER ON MOTION TO DISMISS
AND RESPONDENT'S CROSS-MOTION FOR FEES AND COSTS

SAYLOR, J.

This matter concerns third-party subpoenas that Google Inc. served on EMC Corporation in connection with two patent-infringement cases, one in the United States District Court for the Eastern District of Texas and one in the United States District Court for the Northern District of California.[1]  In this Court, Google filed a motion to compel production of documents responsive to the two subpoenas.  EMC objected to the subpoenas, and later filed an opposition to Google's motion to compel.

Google has moved to dismiss the proceeding because the two patent-infringement cases

---

[1] Those cases were *Rockstar Consortium US LP, et al. v. Google Inc.*, No. 13-00893 (E.D. Tex.) and *Google Inc. v. Rockstar Consortium US LP, et al.*, No. 13-5933 (N.D. Cal.).

have settled. EMC has filed a cross-motion pursuant to Fed. R. Civ. P. 45 for attorneys' fees and costs incurred in responding to the motion to compel. For the following reasons, EMC's cross-motion for fees and costs will be granted.

## I.     Background

### A.     Procedural Background

On November 4, 2014, Google moved in this Court for an order compelling EMC to produce all responsive documents to two subpoenas that Google served on EMC in July 2014. On November 19, 2014, EMC filed an opposition to Google's motion to compel and an affidavit from its Deputy General Counsel, Krishnendu Gupta. Two days later, Google moved to stay its motion to compel discovery from EMC. On March 5, 2015, Google moved to dismiss the proceeding because both of the related patent-infringement cases had settled.

On March 19, 2015, EMC moved pursuant to Fed. R. Civ. P. 45 for an award of attorneys' fees and costs that it incurred in responding to Google's motion to compel. EMC also filed a declaration from its outside counsel, Martin Murphy of the Foley Hoag law firm. EMC's motion contends that Google "refus[ed] to comply with the protections granted to third parties by Rule 45." (Resp't Mot. Fees 1). Google filed its opposition to EMC's motion on April 3, 2015, along with a declaration from its counsel, Michelle Ernst.

The Court held a hearing on both motions. At the hearing, the Court heard argument on the motion for fees and then directed EMC to file evidence as to the amount of attorneys' fees incurred. EMC then moved to file under seal a supplemental declaration in support of its motion for fees. After that motion was granted, EMC's counsel filed under seal a declaration that included billing records for the work performed by EMC's outside counsel in responding to Google's motion to compel.

B.      **Factual Background**

The following facts are undisputed unless otherwise noted.

   1.      **The Patent-Infringement Suits between Rockstar Consortium and Google**

The subpoenas that Google served on EMC arise out of two patent-infringement cases between Google and an entity called Rockstar Consortium US LP. Rockstar is a group of telecommunications and Internet companies that includes Microsoft, Apple, Sony, and Ericsson. (Resp't Mem. 2). EMC is not a member of Rockstar Consortium. (Gupta Aff. ¶ 2).

Rockstar Consortium filed suit against Google in the Eastern District of Texas to enforce fourteen patents involving the Android mobile operating system and Google's search and advertising technology. (Def.'s Mot. Compel Exs. 3, 4). Google then filed a declaratory judgment action in the Northern District of California seeking a declaration of non-infringement of seven of Rockstar Consortium's patents. (Def.'s Mot. Compel Ex. 5). The Court of Appeals for the Federal Circuit ordered the Texas case against Google stayed pending the outcome of Google's declaratory judgment action in California. (Def.'s Mot. Compel Ex. 8).

   2.      **EMC, Rockstar Bidco, and the Nortel Auction**

During its 2011 bankruptcy proceedings, Nortel sold the fourteen patents at issue in an auction of its entire patent portfolio. (Def.'s Mot. Compel Ex. 1 at 50-56). Those fourteen patents were among thousands of patents in Nortel's portfolio sold at the auction, which attracted several technology-company buyers, including Google. (*Id.* at 67). An entity called Rockstar Bidco LP—a group of companies that included Apple, Microsoft, Sony, Ericsson, Blackberry, and EMC—also bid at the auction. (*Id.*). To obtain a license to Nortel's patents, EMC became a limited partner in Rockstar Bidco. (Gupta Aff. ¶ 9). Ultimately, Rockstar Bidco prevailed over Google by placing the winning bid to acquire Nortel's entire patent portfolio.

3

After placing the winning bid, Rockstar Bidco transferred and licensed the Nortel patents to other entities, including newly-formed Rockstar Consortium, and other former Rockstar Bidco members, such as EMC. (Def.'s Mot. Compel Ex. 1 at ¶ 14). Specifically, EMC entered into a non-exclusive license permitting it to use the Nortel patents. (Gupta Aff. ¶ 7). The non-exclusive nature of the license prevented EMC from enforcing the patents. (*Id.* at ¶ 9).

Google contends (without citation to the record) that Nortel provided interested buyers, including EMC, access to confidential diligence materials that allowed bidders to evaluate the validity, enforceability, and value of its patents. (Def.'s Mem. 2). EMC contends that it joined Rockstar Bidco for the sole purpose of obtaining a non-exclusive license to the Nortel portfolio, and that it did not "conduct any substantive validity, enforceability, infringement, or valuation analyses." (Gupta Aff. ¶ 8-9).

### 3.     The Subpoenas and the Parties' Meetings to Confer

On July 23, 2014, Google served a subpoena on EMC in the Texas litigation. (Murphy Decl. ¶ 2; Ex. A). The Texas subpoena is 26 pages long and contains 64 requests. (*Id.*). Nine days later, Google served a second subpoena on EMC in the California litigation. (*Id.* at ¶ 3; Ex. B). The California subpoena is 28 pages long and contains 65 requests. (*Id.*). In both cases, EMC was a non-party and had no financial interest in the outcome. (Gupta Aff. ¶¶ 2-3). The two subpoenas overlap significantly, and have no date limitations. (*Id.* at ¶ 3-4; Exs. A, B). Of the 129 requests in the two subpoenas, 127 of them call for EMC to produce "[a]ll [d]ocuments . . ." about a variety of parties and topics, including the patents' prior art, claim construction, prosecution, and monetization. (*Id.*).[2]

---

[2] For example, three of the requests seek:

"All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING the patentability, novelty, non-obviousness, scope, validity, invalidity, enforceability or unenforceability of any claim of the

After objecting to the subpoenas, EMC began a search for responsive documents. (Gupta Aff. ¶ 10). During its search, EMC found a small number of documents relating to EMC's and other companies' participation in Rockstar Bidco. Specifically, EMC located "(1) EMC's and other companies' limited partnership agreement in Rockstar Bidco; (2) EMC's and other companies' bid commitment letters, in which these companies committed to fund Rockstar Bidco's . . . bid for pre-specified amounts; and (3) EMC's [patent] license agreement." (*Id.* at ¶ 11). EMC offered to produce these documents if Google would agree that their production would satisfy EMC's obligations under the subpoenas, but the parties failed to reach an agreement. (*Id.* at ¶ 20).

Beginning in July 2014, the parties met and conferred at least eight times to negotiate the terms of discovery. EMC objected to Google's subpoenas on three grounds. First, EMC notified Google that its internal documents were not relevant because it had conducted no substantive validity, infringement, or valuation analysis on any of Rockstar Consortium's patents. (*Id.* at ¶ 20). Second, EMC contended that all of its communications with Rockstar Bidco or its shareholders would be available through party discovery with Rockstar Consortium. (*Id.* at

---

PATENTS-IN -SUIT or RELATED PATENTS/APPLICATIONS, including any analyses or searches conducted by NORTEL, ANY ROCKSTAR ENTITY, ANY ROCKSTAR SHAREHOLDER, including YOU, any THIRD PARTY, or by any PERSON on behalf of NORTEL, ANY ROCKSTAR ENTITY, ANY ROCKSTAR SHAREHOLDER, any THIRD PARTY, or YOU." (Murphy Decl. Exs. A, B at Req. 2).

"All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING the value of any of the PATENTS-IN-SUIT, RELATED PATENTS/ APPLICATIONS, or the SUBJECT MATTER IN SUIT, including any valuation performed by YOU, ANY ROCKSTAR SHAREHOLDER, NORTEL, NORTEL'S ADVISORS, ANY ROCKSTAR ENTITY, or any THIRD PARTY, or by any PERSON on behalf of YOU, ANY ROCKSTAR SHAREHOLDER, NORTEL, ANY ROCKSTAR ENTITY, or any THIRD PARTY." (*Id.* at Req. 11).

"All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING the filing and prosecution of the PATENTS-IN-SUIT or RELATED PATENTS/APPLICATIONS, including all draft and final versions of such applications, office actions, draft and final versions of responses to office actions, and all COMMUNICATIONS REGARDING the filing and prosecution of such patent applications." (*Id.* at Req. 49).

5

¶ 17). Third, EMC contended that any internal documents, even if relevant and not available to Google through party discovery, were privileged. (*Id.* at ¶ 18; Ex. 21).

Google insisted that its requests were relevant to both the infringement and damages elements of Rockstar Consortium's patent-infringement claims. (Def.'s Mem. Exs. 20, 23). Google also offered to narrow the date range and negotiate a list of search terms that EMC could use in producing e-mails and other internal documents. For example, Google assented to a six-year search, and a list of seventeen search terms, including "Apple," "Google," "Microsoft," and "Global IP." (Gupta Aff. ¶¶ 20-21). Notably, at the time the parties were negotiating, Google had already obtained documents in party discovery that it was also requesting from EMC, including documents showing how much EMC paid Rockstar Consortium for its non-exclusive license. (*Id.* at ¶ 23).

### 4. Google's Motion to Compel and EMC's Opposition

With the parties at a standstill three months into negotiations, Google filed a motion to compel in this Court on November 4, 2014. EMC retained outside counsel on November 5 to prepare its response to the motion. (Murphy Suppl. Decl. ¶ 2). Meanwhile, Rockstar Consortium and Google entered settlement negotiations in the Texas case. The parties disagree about Google's knowledge of those negotiations. EMC contends that Google entered into a binding term sheet in the Texas litigation on November 12, 2014. (Resp't Mem. Supp. Mot. Fees 4). Google contends that it had limited knowledge of those settlement negotiations because RPX, a third-party patent clearinghouse, was negotiating with Rockstar Consortium. (Def.'s Mem. 7-8).

The parties do agree that EMC's counsel, suspecting that the two infringement cases were approaching a settlement, called Google's counsel on Friday, November 14, to ask whether

Google would stay or withdraw its subpoenas. (Murphy Decl. ¶ 4; Ernst Decl. ¶¶ 26-27). Google informed EMC that neither the Texas nor California litigation had settled and that discovery was proceeding, but that it would not oppose an extension for EMC to respond to the motion to compel. (Murphy Decl. ¶¶ 4-5; Ernst Decl. ¶¶ 26-27). On November 18, Google informed EMC that the parties in the Texas litigation had announced a pending settlement and sought a stay. (Murphy Decl. ¶¶ 6-7). Again, instead of staying the proceeding in this Court or withdrawing its motion to compel, Google informed EMC that it would not oppose an extension for its response. (*Id.* at ¶ 8).

EMC moved to file its opposition to Google's motion to compel under seal on November 18, and the next day it filed its opposition. Two days later, Google filed an unopposed motion to stay its motion to compel. On February 24, 2015, Google informed EMC that both the Texas and California cases had reached final settlements. On March 5, Google moved to dismiss the proceeding in this Court. On March 19, 2015, EMC filed a cross-motion for fees and costs.

### 5. Attorneys' Fees and Costs

After hearing oral argument on Google's motion to dismiss and EMC's cross-motion for fees and costs, the Court directed EMC's counsel to file a supplemental declaration detailing the hours, fees, and costs EMC incurred. EMC is pursuing only the fees and costs that it incurred in hiring outside counsel to respond to Google's motion to compel. EMC incurred $35,696 in legal fees for 77.3 billable hours and $209.48 in costs between November 5, 2014 (when it retained Foley Hoag on the matter) and November 20, 2014 (when it filed its redacted public opposition to the motion to compel). (Murphy Suppl. Decl. ¶ 2). The matter was handled by one partner (billed at a rate of $680 per hour), one associate (billed at a rate of $408 per hour), and one paralegal (billed at a rate of $228 per hour). (*Id.* at Ex. A).

7

**II.     Standard of Review**

The Federal Rules of Civil Procedure permit "discovery regarding any non-privileged matter that is relevant to any party's claim or defense" or discovery of any information that "appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). Because "discovery itself is designed to help define and clarify the issues," the limits set forth in Rule 26 must be "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).

It is well-established that "[t]he non-party witness is subject to the same scope of discovery under [Rule 45] as that person would be as a party to whom a request is addressed pursuant to Rule 34." Fed. R. Civ. P. 45, Advisory Committee's Note (1991 Amendment). However, Rule 45 provides special protections for non-parties that receive subpoenas. "A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing *undue burden or expense* on a [non-party] subject to the subpoena." Fed. R. Civ. P. 45(d)(1) (emphasis added); *see also Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1998) ("[C]oncern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing [discovery] needs."). The ultimate determination of undue burden and reasonableness is subject to the discretion of the court. *See United States v. Concemi*, 957 F.2d 942, 949 (1st Cir. 1992).

In determining whether a subpoena imposes an "undue burden" on a non-party, courts consider "(1) the relevance of the information requested; (2) the need of the [non]-party for the documents; (3) the breadth of the document request; (4) the time period covered by the request; (5) the particularity with which the party describes the requested documents; (6) the burden

imposed; and (7) the expense and inconvenience to the non-party." *LSI Corp. v. Vizio, Inc.*, 2012 WL 1926924, at *3 (D. Mass. May 24, 2012); *see also In re New Eng. Compounding Pharm., Inc.*, 2013 WL 6058483, at *6 (D. Mass. Nov. 13, 2013). No single factor in the undue-burden test is dispositive. *See, e.g.*, *Legal Voice v. Stormans, Inc.*, 738 F.3d 1178, 1185 (9th Cir. 2013) ("The district court need not impose sanctions every time it finds a subpoena overbroad; such overbreadth may sometimes result from normal advocacy . . . .").

The non-party resisting discovery "bears the burden of showing that the subpoena imposes an undue burden, and it cannot rely on a mere assertion that compliance would be burdensome and onerous without showing the manner and extent of the burden and the injurious consequences of insisting upon compliance." *In re New Eng. Compounding Pharm., Inc.*, 2013 WL 6058483, at *6. But if the non-party does meet its burden of showing a subpoena imposes an undue burden, "[t]he court for the district where compliance is required *must* . . . impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply." Fed. R. Civ. P. 45(d)(1) (emphasis added).

### III. Analysis

EMC contends that this Court should award it attorneys' fees under Rule 45 for three reasons. First, EMC contends that the subpoenas seek information that is irrelevant to the patent litigation between Rockstar Consortium and Google. Specifically, EMC contends that because it did not conduct any substantive validity, infringement, or valuation analyses of the Nortel portfolio, its internal communications about a non-exclusive license are irrelevant to the key issue in the underlying litigation: whether Google infringed the fourteen patents owned by Rockstar Consortium. Second, EMC contends that even if the Google subpoenas sought relevant information, it did not need to burden EMC, a non-party, with subpoenas to obtain the desired

documents. Rather, EMC contends that Google's requests could have been more efficiently resolved in party discovery with Rockstar Consortium. EMC cites to cases in this district to support the proposition that Rule 45 requires a party to obtain documents, when reasonably available, from an adverse party rather than a non-party. *See, e.g.*, *Accusoft Corp. v. Quest Diagnostics, Inc.*, 2012 WL 1358662, at *10 (D. Mass. April 18, 2012) (holding that "the discovery at issue must be limited because it is cumulative and because it can be obtained from another source that is more convenient—namely, the defendants themselves"). Third, EMC contends that Google's subpoenas were "extraordinarily broad." (Resp't Mot. Fees 1). EMC points to not only the total length of the subpoenas, but also to the sweeping nature of each request. Specifically, EMC contends that Google failed to tailor its requests to EMC's limited involvement in the Nortel patent auction.

In its opposition, Google first contends that it sought information from EMC that was relevant to the development of its invalidity, infringement, and valuation defenses in the underlying litigations against Rockstar Consortium. Second, Google contends that EMC's party-discovery argument "fails to take into consideration the actual circumstances in the underlying cases." (Def.'s Mem. 12). Specifically, Google contends that the discovery in the underlying cases was "far from straightforward," and that it "had no way of knowing which [Rockstar Bidco] third-party entities had what discovery, and whether any entities had overlapping information." (*Id.*). Third, Google contends that its subpoenas were not overbroad. Specifically, it asserts that the 129 requests were "more than reasonable given the complexity of the issues and the high stakes involved in the underlying cases." (*Id.* at 14). Finally, Google contends that even if its subpoenas imposed an undue burden on EMC, it later took reasonable steps to alleviate that burden by negotiating with EMC on date ranges, search terms, and

privilege procedures.

The first factor of the Rule 45 undue-burden test weighs in favor of awarding attorneys' fees to EMC, because Google's subpoenas appear to have sought largely irrelevant information. The underlying lawsuits between Rockstar Consortium and Google involved allegations of infringement of fourteen patents that Rockstar Consortium acquired at the Nortel auction. Presumably, the three key issues in those cases were (1) the validity of the patents; (2) whether Google infringed the patents; and (3) the amount, if any, of damages. But EMC notified Google early in the discovery process that it had not conducted any substantive validity, infringement, or valuation analyses of the patents at issue before the Nortel auction. Furthermore, that assertion makes sense, because EMC was only a limited partner in Rockstar Bidco. Unlike the many shareholders that had equity interests in Rockstar, EMC sought a non-exclusive license to the Nortel patent portfolio solely for design-freedom purposes. In essence, EMC had no economic interest in enforcing the patents. Therefore, it would have been a waste of resources for EMC to conduct validity and valuation analyses on thousands of Nortel patents, only to drop out of Rockstar Consortium and license the patents on a non-exclusive basis.

But even if EMC did analyze the validity of the thousands of patents in Nortel's portfolio, Google has failed to demonstrate why that third-party information would be relevant to their defenses in the Rockstar Consortium cases. Google contends that EMC had information that was relevant to proving that the fourteen Rockstar Consortium patents were "invalid, unenforceable, and not infringed." (Def.'s Mem. 12). But that argument strains the concept of relevance for at least three reasons.

First, the validity of the Nortel patents involve questions of law that would be determined by the Texas and California district courts. *See* 35 U.S.C. §§ 101-03, 112. EMC's internal

patent-validity assessments, if they even existed, would not affect the courts' determinations, nor would a court likely even consider them. Second, the infringement issue would be focused on the elements of the Rockstar Consortium patents and Google's allegedly infringing products. A non-party's internal documents were not likely to be relevant to that factual question. Third, EMC's internal documents about its paid-up, non-exclusive license to Nortel's portfolio are tenuously relevant, at least, to the damages inquiry in the underlying cases. The Federal Circuit has rejected damages determinations that rely on licenses that are not comparable to the damages at issue. *See, e.g.*, *Trell v. Marlee Elecs. Corp.*, 912 F.2d 1443, 1447 (Fed. Cir. 1990) (holding that the trial court's "apparent failure to consider the fact that the . . . license was exclusive and that it encompassed the right to other inventions compels reversal"). And even if the value of EMC's license was somehow relevant to Google's damages defense, Google had already obtained from another source EMC's commitment letter to Rockstar Bidco showing how much it paid for the non-exclusive license. In short, EMC's internal documents were not likely to be relevant to the patent validity, infringement, or damages issues that were in dispute between Google and Rockstar Consortium.

The second factor of the Rule 45 undue-burden test also weighs in favor of awarding attorneys' fees to EMC. Google's document requests could have been satisfied, to a considerable extent, through requests to Rockstar Consortium. For example, Google's requests for communications between EMC and Rockstar, as well as other information about Rockstar entities would have been available in party discovery.[3] Google contends that it was forced to

---

[3] For example, request number 3 seeks:

"All DOCUMENTS and THINGS, including COMMUNICATIONS, between YOU and . . . ANY ROCKSTAR ENTITY, ANY ROCKSTAR SHAREHOLDER . . . REGARDING the PATENTSIN-SUIT or SUBJECT MATTER IN SUIT." (Murphy Decl. Exs. A, B at Req. 3).

Request number 17 seeks:

serve broad subpoenas on EMC because discovery with Rockstar Consortium was "far from straightforward" and proceeding slowly. But Rule 45 does not excuse imposing an undue burden on EMC, a non-party, because of discovery difficulties with Rockstar Consortium.

The third, fourth, and fifth factors of the undue-burden test, all of which relate to the breadth of the subpoenas, also weigh in favor of EMC. Each individual request that begins with "[a]ll [d]ocuments and things . . ." appears to have been overly broad and unduly burdensome. Google's subpoenas contained 129 requests, and the 54 pages of definitions and requests covered everything from EMC's business relationship with each Rockstar Consortium shareholder to its knowledge of the prior art for Nortel's entire patent portfolio. Furthermore, the Google subpoenas do not specify a date limitation, nor do they identify with particularity what specific documents they are seeking. Google contends that it took reasonable steps to avoid imposing a burden on EMC after serving its subpoenas by proposing search terms and a date range. But Google's proposals included searching for generic terms like "Google," "Microsoft," "Apple," and "Global IP" in six years of e-mails and internal documents. And even if Google's proposals lessened the burden on EMC, the discovery rules do not permit a party to begin with broad, burdensome subpoenas and only then proceed to target specific, relevant information, especially when non-parties are involved. Such discovery practices would nullify the protections that Rule 45 affords non-parties.

Finally, the Court finds that Google's subpoenas and motion to compel actually burdened EMC, and that the fee award EMC seeks is reasonable. Google served EMC with the first

---

"All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING ANY ROCKSTAR ENTITY's structure, including organizational charts REGARDING ANY ROCKSTAR ENTITY." (*Id.* at Req. 17).

subpoena on July 23, 2014, and EMC's in-house attorneys spent significant time and resources in responding to Google over the next three months. EMC is not seeking compensation for these internal costs. But when Google filed its motion to compel on November 4, 2014, EMC resorted to hiring outside counsel to assist with the matter. EMC's outside counsel dedicated 77.3 hours over the course of 15 days to the matter, culminating in the filing of EMC's opposition to the motion to compel on November 20, 2014. EMC incurred and paid a total of $35,696 in fees and $209.48 in costs during that two-week period. After a detailed review of the submissions, the Court concludes that the billing rates and hours dedicated to the matter are reasonable.

## IV.     Conclusion

For the foregoing reasons, the Court finds that Google's subpoenas were overbroad, unnecessary, and largely irrelevant, and imposed an undue burden on a non-party under Rule 45. The cross-motion of respondent EMC Corporation for attorneys' fees and costs is therefore GRANTED. EMC is hereby awarded its reasonable attorneys' fees and costs in the amount of $35,905.48. The motion of defendant Google Inc. to dismiss is GRANTED in part, as the matter has been resolved. The Court will retain jurisdiction over this matter to ensure compliance with its order.

**So Ordered.**

Dated:  October 14, 2015

/s/ F. Dennis Saylor
F. Dennis Saylor IV
United States District Judge